UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Crim. No. 6:21-cr-00013-GFVT-HAI |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| EVA MISRA, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Eva Misra's Motion to Sever. [R. 378.] Dr. Misra is charged in six of the twenty-seven counts in this matter. [R. 1.] She claims that severance is appropriate given the complexity of the case, delays in producing discovery, and the fact that she is not charged in each of the alleged conspiracies. [R. 378-1 at 1-2.] For the reasons set forth below, the Motion to Sever [R. 378] is **DENIED**.

**I**

As noted in prior orders, the eleven Defendants in this matter are charged with twenty-seven counts arising from their practices at EHC Medical Offices, a medical clinic in Tennessee. [R. 1.] Eight of the defendants, including Dr. Misra, were physicians who provided treatment at EHC. *Id.* at 7. All of the defendants are charged with a conspiracy to violate the Controlled Substances Act. *Id.* at 7-8. Dr. Misra is then charged with a conspiracy to make false statements, conspiracies to engage in financial transactions involving proceeds from unlawful activity, and engaging in monetary transactions in criminally derived property. *Id.* at 8-9, 19-20, 30-31. Relevant to her Motion, Counts 4 and 5 allege conspiracies to defraud health care benefit programs by submitting false claims for prescription reimbursement and urine testing. *Id.* at 15-

21. She is not charged in those conspiracies. Largely because the Indictment alleges those two conspiracies that she is not a part of, Dr. Misra now moves for severance from her co-defendants.

II

A

Federal Rule of Criminal Procedure 8(b) allows multiple criminal defendants to be indicted in the same proceeding under certain circumstances. An indictment may charge two or more defendants who "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). Where multiple defendants are jointly charged in the same criminal proceeding, there is a strong presumption in favor of trying the co-defendants together. *See, e.g.*, *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Courts have made clear that joint trials "serve society's interest in the speedy and efficient resolution of cases when the charges will be proved by the same evidence and result from the same acts." *United States v. Martinez*, 432 F. App'x 526, 529 (6th Cir. 2011) (quoting *United States v. Caver*, 470 F.3d 220, 237 (6th Cir. 2006)).

Nevertheless, co-defendants may be severed from one another and tried in separate proceedings where substantial prejudice will result from a joint trial. Fed. R. Crim. P. 14(a). The Supreme Court interpreted Rules 8 and 14 to allow severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 537. For example, severance may be appropriate where evidence is admissible against one of the defendants but not another, where two defendants have "markedly different degrees of culpability," or where one defendant's exculpatory evidence would be inadmissible in a joint trial. *See Martinez*, 432 F. App'x at 529.

Conflicting defenses among co-defendants do not necessarily warrant severance. CHARLES ALAN WRIGHT & ARTHUR R. MILLER, 1A FED. PRAC. & PROC. § 223 (4th ed.). Further, severance is not required merely because one defendant may have a higher chance of acquittal if she is tried separately from her co-defendants. *Id.*; *Zafiro,* 506 U.S. at 540; *United States v. Graham*, 796 F.3d 332, 369 (4th Cir. 2015) ("The defendant seeking severance must show that actual prejudice would result from a joint trial . . . and not merely that a separate trial would offer a better chance of acquittal."). Even if there is a high risk of some prejudice if a defendant is jointly tried, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *United States v. Driver*, 535 F.3d 424, 427 (6th Cir. 2008) (quoting *Zafiro*, 506 U.S. at 539).

**B**

**1**

Dr. Misra first contends that severance is warranted because, for multiple reasons, the jury will be unable to make a reliable judgment about her guilt or innocence. [R. 378-1 at 9-16.] She cites *United States v. Blankenship*, an out of circuit case outlining three specific scenarios that endanger a reliable judgment. *Id.* at 10-13 (citing 382 F.3d 1110, 1123-24 (11th Cir. 2004)). She claims each scenario is present here. *Id*. The Government argues she does not identify any specific prejudice that will result from a joint trial. [R. 406.] It relies on the strong presumption in favor of joint trials and argues she simply did not overcome that presumption. *Id.*

**a**

*Blankenship*'s first scenario warranting severance occurs when evidence not admissible against one defendant will be admitted against their co-defendant. 382 F.3d at 1123. This is based on the notion that one defendant may be unfairly prejudiced by the "spillover effect" of

3

evidence admitted against her co-defendants which could not be admitted against her alone. The mere existence of evidence that may have a spillover effect does not justify severance unless the defendant shows that it would prejudice her. *United States v. Gallo*, 763 F.2d 1504, 1526 (6th Cir. 1985). Prejudice exists if the jury will be unable to "separate and treat [the evidence] distinctively." *United States v. Swift*, 809 F.2d 320, 322 (6th Cir. 1987). This showing must overcome the presumption that juries are "capable of following instructions regarding the sorting of evidence and the separate consideration of multiple defendants." *United States v. Mays*, 69 F.3d 116, 120 (6th Cir. 1995). For example, *Blankenship* contemplated cases in which the evidence was so "convincing" or "gruesome" against one defendant that it overwhelmed the case against their co-defendant to the extent that the jury could not respect an instruction to compartmentalize the evidence. 382 F.3d at 1123-24.

      Dr. Misra believes the evidence on Counts 4 and 5, which charge five of her co-defendants with conspiracies to submit fraudulent healthcare benefit claims, will "undoubtedly pollute [her] in the eyes of the jury." [R 378-1 at 10.] She alleges those Counts will require the admission of "huge quantities of evidence" including hearsay and "millions of dollars of allegedly fraudulent claims" that do not implicate her. *Id.* at 11-12. The Government contends the evidence on Counts 4 and 5 is not of the sort contemplated by *Blankenship* and that Count 1 has "substantial overlapping evidence" with every other charge. [R. 406 at 4.] Accordingly, it argues "relatively little evidence" is solely relevant to Counts 4 and 5 and that small portion of the evidence is not so provocative or inflammatory to justify severance. *Id.* at 5.

      Beyond the volume of evidence to be presented on Counts 4 and 5, Dr. Misra presents a more specific argument that the evidence on Count 4 will prejudice her. [R. 378-1 at 12-13 ("[T]he spillover risk from Count 4 is perhaps most acute.").] Count 4 charges five of Dr.

4

Misra's co-defendants with a conspiracy to commit wire and health care fraud by submitting reimbursement claims for unauthorized prescriptions. [R. 1 at 15-18.] Dr. Misra is charged in Count 1 with a CSA conspiracy to issue unauthorized prescriptions for some of the same medications. *Id.* at 9-10. She suggests that because the Counts involve prescriptions for the same substances, the jury will be unable to silo the evidence. [R. 378-1 at 12-13.]

Dr. Misra fails to show she will be prejudiced by the evidence offered on Counts 4 and 5. Her general claim that the Government will present "huge quantities of evidence" not involving her is misguided. [R. 378-1 at 11.] The Government indicates that much of the evidence on Counts 4 and 5 is shared with Count 1. [R. 406 at 4-5.] This is unsurprising. All of the Defendants are charged in a conspiracy to violate the CSA by issuing unauthorized prescriptions for controlled substances. [R. 1 at 9-10.] Five Defendants are then charged with conspiring to submit fraudulent healthcare benefit claims, some of which were for reimbursement of the unauthorized prescriptions. *Id.* at 15-21. The Counts are related because some Defendants allegedly engaged in additional criminal conduct apparently rooted in the CSA conspiracy.

The jury will be readily capable of distinguishing the CSA conspiracy from the fraudulent claims conspiracy. Dr. Misra is never alleged to have submitted fraudulent claims. The claim submission context makes Counts 4 and 5 easily distinguishable from Count 1. Dr. Misra recognizes as such, stating "the only connection between the conduct alleged in Count 1 and that alleged in Counts 4 and 5 is prescription-writing. Nothing else about the proof on Counts 4 or 5 will relate to Count 1 in any way." [R. 434 at 3.] It is inconsistent to argue both that her connection to Counts 4 and 5 is "non-existent" and that she will be prejudiced by the evidence presented on those Counts. *Id.* at 5. If the Counts do not implicate Dr. Misra, the evidence solely relevant to those Counts will not prejudice her. Dr. Misra is further

5

distinguished from Counts 4 and 5 by her role at EHC. She characterizes the Defendants charged in those Counts as those with "ownership, managerial, and supervisory roles." [R. 378-1 at 7.] This clear distinction will assist the jury in understanding that the fraudulent claims conspiracies are different than the CSA conspiracy, even though the latter may underly one of the former. Because Dr. Misra is not connected to or implicated in Counts 4 and 5, the jury will be able to distinguish that evidence from the evidence presented against her.

The Court's standard practice in a case such as this is to instruct the jury to separately consider the evidence against each defendant and to make an independent determination of guilt based on the proof presented as it relates to each particular defendant. *See Sixth Circuit Pattern Jury Instruction § 2.01C, available at* http://www.ca6.uscourts.gov/pattern-jury-instructions. Dr. Misra does not establish any "compelling, specific, and actual prejudice," let alone prejudice that cannot be overcome by a limiting instruction. *Driver*, 535 F.3d at 427; *see also Zafiro*, 506 U.S. at 539. Ultimately, "the presentation of evidence applicable to more than one defendant is simply a fact of life in multiple defendant cases." *Causey*, 834 F.2d at 1288. Dr. Misra does not face a prejudicial spillover effect from being tried jointly with her co-defendants.

**b**

Second, Dr. Misra argues this case falls within the "extremely narrow range of cases" that are so complex that it is "nearly impossible for a jury to juggle everything properly and assess the guilt or innocence of each defendant independently." [R. 378-1 at 11 (citing *Blankenship*, 382 F.3d at 1124).] She does not believe the jury can properly silo the evidence in this case because it involves eleven defendants charged with twenty-seven total counts. *Id.* Specifically, she is concerned that she will be tainted by "weeks" of evidence presented on Counts 4 and 5.

6

*Id.* The Government argues this case is not comparable to the narrow cases warranting severance because the charges all relate to EHC's "unified operation." [R. 406 at 6.]

Courts assume that juries can sort out evidence, counts, and defendants in complex cases. *Swift*, 809 F.2d at 323. A small potential for confusion does not warrant severance because it does not outweigh society's interest in efficient trials. *Id.* In *Gallo*, the Sixth Circuit discussed trials that were so complex they presented a high risk of impermissible spillover evidence. 763 F.2d at 1526 (discussing *United States v. Tolliver*, 541 F.2d 958, 962 (2d Cir. 1976)). In those cases, seventeen to nineteen defendants were tried simultaneously. Compare *Gallo* to *Swift*, which affirmed the district court's denial of a motion to sever in a case with nine defendants charged with seventeen counts. 809 F.2d at 321-23.

Precedent does not support Dr. Misra's contention that this case is so complex a jury cannot properly assess each defendant's individual guilt. Only eleven defendants were indicted in this case and ten at most will proceed to trial. [*See* R. 1; R. 233.] The ten defendants potentially proceeding to trial in this matter are closer to the nine in *Swift* than the seventeen to nineteen in *Gallo*. As explained above, the jury will be able to sort out the charges and evidence amongst the ten defendants. This is not the rare case that is so complex that a jury cannot properly assess guilt.

c

Finally, Dr. Misra claims her criminal conduct is significantly different than that of her co-defendants. [R. 378-1 at 11.] She emphasizes that "she will undoubtedly be victimized by huge quantities of evidence that will be admitted against other defendants." *Id.* at 11. While this argument is framed as a distinct basis for severance, mirroring the structure of the *Blankenship* opinion, it actually elaborates on her claim about spillover evidence. *Id.* at 11-13. A risk of

7

prejudice from evidence admitted solely against co-defendants is the definition of spillover evidence, which is distinct from incomparable criminal conduct. *See Causey*, 834 F.2d at 1287. As explained above, a reasonable jury can distinguish between Count 1 and Counts 4 and 5, so severance is not warranted for prejudicial spillover evidence.

Dr. Misra's alleged criminal conduct is not significantly different than that of her co-defendants. *Blankenship* shows that differing criminal conduct is a basis for severance in much more drastic situations than the one at hand. For example, a defendant charged with making false statements to the grand jury and misprision of felony should have been severed from his co-defendants who were charged with an "extremely violent assassination scheme." *Blankenship*, 382 F.3d at 1125 n.26 (citing *United States v. Sampol*, 636 F.2d 621, 646-47 (D.C. Cir. 1980)). Another case *Blankenship* cites as an example severed trial of a drug trafficking conspiracy from that of a related RICO conspiracy because the latter involved murder and attempted murder charges, some of which were death-penalty eligible. *Id.* (citing *United States v. Maisonet*, 1998 U.S. Dist. LEXIS 9696, at *11-14 (S.D.N.Y. June 30, 1998)).

In contrast, Dr. Misra is charged with very similar conduct to her co-defendants. First, she is charged in *four* conspiracies, one of which involves all of her co-defendants. [R. 1.] The other three conspiracies involve eight of her co-defendants. *Id.* She is also charged with violating 18 U.S.C. §§ 1956(a)(1) and 1957, as are those eight co-defendants. *Id.* The character of her criminal conduct is *nearly identical* to that of her eight co-defendants who also worked at EHC. Severance is not warranted on this basis.

**2**

Dr. Misra also argues "the unique circumstances of this case present a reason for severance not previously considered." [R. 378-1 at 13.] She invokes *Ruan*, a recent case in

which the Supreme Court ruled that a physician must have known their prescriptions were unauthorized to be convicted under the CSA. *Ruan v. United States*, 142 S. Ct. 2370, 2375 (2022). As a result, she argues "individualized determination of Dr. Misra's state of mind is even more critical than ever, and the risk of the jury being tainted by spillover prejudice from conspiratorial conduct not involving her [Counts 4 and 5], more acute." [R. 378-1 at 14.] The Government emphasizes that Dr. Misra is charged with a conspiracy to violate the CSA, not a direct CSA charge, and that conspiracy has a *mens rea* requirement regardless of the target offense. [R. 406 at 9.] Nevertheless, it argues that *Ruan* does not "present any unique circumstance to" Dr. Misra because all defendants are charged in the CSA conspiracy. *Id.* at 10.

Above, the Court explained that Dr. Misra has not shown she will be prejudiced by spillover evidence from Counts 4 and 5. This is not altered by *Ruan*. To the extent the Government must satisfy *Ruan*'s *scienter* requirement, it must do so for all eight of the physician defendants. There is no reason that the proof solely relevant to Counts 4 and 5—evidence of fraudulent claims—will interfere with proof of Dr. Misra's subjective mental state on Count 1. *Ruan* does not change the dynamic of the trial to the extent that severance is warranted.

3

Finally, Dr. Misra argues that she should be severed because she is unprepared for the January 2023 trial due to delays in discovery production. [R. 378-1 at 17-20.] She references a "huge quantity" of documents she expects to be disclosed, which she cannot review before trial in January 2023. *Id.* at 18. The only factor which distinguishes her from her co-defendants is that she obtained new counsel in April. *Id.* at 17. But this is inapposite because it does not affect review of documents yet to be produced. The only case she cites in support involved a defendant who only had five months to prepare for trial, in contrast to her co-defendants' twenty-one

9

months of preparation. *Id.* at 19 (citing *United States v. Poulsen*, 2008 WL 77745, at *1 (S.D. Ohio Jan. 4, 2008)). Dr. Misra is not in a comparable position. The five other defendants who are also awaiting these disclosures are similarly situated.

Dr. Misra recently filed a Motion to Continue based on more up-to-date information. [R. 471.] Because some of her co-defendants are in the same position regarding discovery disclosures, the continuance motion is the more appropriate venue for the Court to consider this issue. Dr. Misra is not entitled to severance based on discovery delays.

### III

Ultimately, Dr. Misra does not establish that she will be prejudiced by a joint trial. The Court does not deem this the rare case in which separate trials are required to avoid compromising Dr. Misra's constitutional rights. For the foregoing reasons and the Court being otherwise sufficiently advised, Dr. Misra's Motion to Sever **[R. 378]** is hereby **DENIED**.

This the 28th day of October, 2022.

Gregory F. Van Tatenhove
United States District Judge